IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARRON P. JOHNSON,

Plaintiff,

No. CIV S-10-2578 EFB

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

ORDER

_________________________________/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. For the reasons discussed below, the court grants plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands the case for payment of benefits.

I. Factual and Procedural Background

Plaintiff filed an application for supplemental security income on March 16, 2007, alleging that he had been disabled since June 1, 2005.[1] Administrative Record ("AR") 11.

////

[1] Plaintiff had previously filed an application for benefits in 2002. *See* AR 30.

Plaintiff's application was initially denied on August 23, 2007, and on reconsideration on February 11, 2008. *Id.* at 11. On December 2, 2009, a hearing was held before administrative law judge ("ALJ") David R. Mazzi. *Id.* at 10. Plaintiff was represented by attorney Robert C. Hubbs at the hearing, at which plaintiff and vocational expert ("VE") Gene C. Johnson testified. *Id.* at 26-69.

On January 7, 2010, the ALJ issued a decision finding that plaintiff was not disabled.[2] *Id.* at 20. The ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since March 16, 2007, the application date, or since the alleged disability onset on June 1, 2005 (20 CFR § 416.971, *et seq.*).
>
> . . .

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

2. The claimant has the following severe impairments: mild degenerative disc disease of the lumbar spine, and an affective disorder with generalized anxiety (20 CFR § 416.920(c)).

. . .

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of any section of the Listing of Impairments at 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 416.920(d), 416.925 and 416.926).

. . .

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform at least unskilled sedentary work as defined in 20 CFR § 416.967(a).[3]

. . .

5. The claimant is unable to perform any past relevant work (20 CFR § 416.965).

. . .

6. The claimant was born on November 12, 1967, and was thirty-nine years old, which is defined as a younger individual age 18-44, on the date on which the application was filed (20 C.F.R. § 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).

. . .

8. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 416.969 and 416.969(a)).

. . .

10. The claimant has not been under a disability, as defined in the Social Security Act, at any time from March 16, 2007, the date on which the application was filed, or June 1, 2005, the alleged disability onset (20 C.F.R. § 416.920(g)).

---

[3] Later in the opinion the ALJ writes that he asked the VE for testimony using the following RFC: "sedentary work with a sit and stand option every thirty minutes and with a non-exertional limitation of no public contact." AR 19.

*Id.* at 13-20.

Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 6-7. However, on July 28, 2010, the Appeals Council denied review, leaving the ALJ's decision as the "final decision of the Commissioner of Social Security." *Id.* at 3-5.

II. Standard of Review

The Commissioner's decision that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

////
////
////
////
////

III. Analysis

A. The ALJ Failed to Provide Legally Adequate Reasons for Rejecting an Examining Physician's Opinions.

Plaintiff argues that the ALJ improperly rejected examining psychologist Dr. Cormier's opinions. Pl.'s Mot. for Summ. J., Dckt. No. 15 at 8. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may only be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. This test is met if the ALJ sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states his interpretation of the evidence, and makes a supported finding. *Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir. 1989). Absent specific and legitimate reasons, the ALJ must defer to the opinion of a treating or examining physician. *Lester*, 81 F.3d at 830–31. The opinion of a non-examining physician, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *Id.* at 831.

Dr. Cormier examined plaintiff in May 2007 at the request of the Social Security Administration. AR at 269-273. Dr. Cormier found plaintiff had "mildly impaired concentration, his intermediate memory was perhaps significantly impaired, and his working memory may be significantly impaired and he was only able to recall, reorganize, recite a mixture of only three letters and number." *Id.* at 271. Furthermore, plaintiff's "general vocabulary, word usage, reported history, and ability to conceptualize suggested an individual of below average to borderline intellectual functioning." *Id.* Dr. Cormier assigned plaintiff a

Global Assessment of Functioning ("GAF") score of 55, indicative of moderate impairment. *Id.* at 271-272. Dr. Cormier diagnosed plaintiff with major depressive disorder, recurrent and moderate, chronic post-traumatic stress disorder, and panic disorder without agoraphobia. *Id.* at 270. With respect to plaintiff's ability to work, Dr. Cormier gave the following functional assessment:

> Psychologically, the combination of Mr. Johnson's depression and anxiety disorders coupled with his chronic pain are likely to significantly impair his current ability to perform not only complex and detailed tasks but simple and repetitive ones as well. I suspected his pain and depression may significantly impair his ability to maintain greater attendance and perform work activities on a consistent basis. If a position could be found for him he would probably require special or additional supervision. His ability to complete a normal workday or workweek without interruptions resulting from the manifestations of his chronic pain and depression appears significantly impaired at the present time. No formal memory testing was done with this man, but mental status information suggested significant impairment regarding his current ability to accept and remember instructions from supervisors. His history and interview behavior suggested possible mild impairment regarding his current ability to accept and remember instructions from supervisors. His history and interview behavior suggested possible mild impairment regarding his current ability to interact with coworkers and the general public. However, his history and response to stress of examination were not necessarily suggestive of significant impairment regarding his current ability to deal with typical stresses that he may encounter in a competitive work situation . . . He indicated that he is capable of performing basically all activities of daily living at this time but does have some difficulty doing chores. Apparently he has had difficulty maintaining social relationships. He demonstrated episodic concentration lapses and moderate impairment regarding both persistence and pace.

*Id.* at 272.

The ALJ wrote that "some weight" should be given to Dr. Cormier's assessment, finding:

> As for claimant's psychological impairments, clinical psychologist Sid Cormier, Ph.D., consultatively examined the claimant in May 2007 (Ex. B2F). Dr. Cormier diagnosed the claimant with major depressive disorder, recurrent and moderate, chronic post-traumatic stress disorder, and panic disorder without agoraphobia (Ex. B2F, pp. 2 & 3). The psychologist assessed that the claimant's depression, anxiety, and chronic pain were likely to impair his ability to perform not only complex and detailed tasks but simple and repetitive ones as well (Ex. B2F, p. 4). He assessed some significant impairment at [completing] a normal workday and workweek, and mild impairment in interacting with co-workers and general public (*id.*). Some weight is given to Dr. Cormier's assessment, although the record as a whole does not indicate a preclusion from simple, repetitive tasks equating to unskilled work.

*Id.* at 17.

Although the ALJ purported to give "some weight" to Dr. Cormier's opinion, he specifically rejected the doctor's opinion that plaintiff was significantly impaired in performing simple and repetitive tasks. *See* AR at 272, 17. The ALJ did not explicitly reject Dr. Cormier's opinions that plaintiff was significantly impaired in completing a normal workday and workweek, and that he would "probably require special or additional supervision." *Id.* at 17. However, as noted above, the ALJ found that plaintiff could perform "at least unskilled sedentary work" with no further limitations.[4] This conclusion is at odds with Dr. Cormier's assessed limitations. Thus, regardless of the words the ALJ used, he actually rejected Dr. Cormier's opinions that plaintiff could not perform simple, repetitive tasks; was significantly impaired in his ability to maintain greater attendance and perform work activities on a consistent basis, and complete a normal workday or workweek without interruptions; and would probably require special or additional supervision.

Dr. Cormier's opinions regarding plaintiff's functional limitations differ from the opinions of the two state agency psychological consultants who also offered opinions on plaintiff's mental impairments. On August 17, 2007, Dr. Gross opined that plaintiff was moderately restricted in his activities of daily living and had moderate difficulties in maintaining social functioning and concentration, persistence or pace. *Id.* at 299. Dr. Gross opined that plaintiff had adequate understanding, memory, concentration and attention for 1-2 step tasks and for a full workday and full workweek; and had adequate social interaction capacity for dealing with peers and supervisors, but not with the public. *Id.* at 302-04. Dr. Davis, a non-examining state agency doctor, apparently reviewed and concurred with Dr. Gross' assessment. His single-sentence report states only, "[t]he determination from 8/17/07 has been reviewed & is affirmed

---

[4] As noted above, the ALJ gave a different, more restrictive, hypothetical RFC--"sedentary work with a sit and stand option every thirty minutes and with a non-exertional limitation of no public contact"–to the VE at the hearing. *See* AR 19.

as written. Chavez case."[5] *Id.* at 348.

It is unclear to what extent the ALJ relied on or rejected the state agency consultants' opinions. The ALJ purported to give at least some "weight" to Davis and Gross' opinions:

> As noted above, State agency psychological consultants assessed moderate limitations (Exhibits B6F-B7F, B11F). Weight is given to the state agency consultant's [sic] assessment only to the extent that it is consistent with the residual functional capacity found herein based upon the record as a whole. ...
>
> ...The claimant's psychological impairments, at most, limit him to simple, repetitive tasks equating to unskilled work.

*Id.* at 17-18. The ALJ ostensibly gave the state agency consultants' opinions weight only to the extent that their opinions matched his written assessed RFC of "simple, repetitive tasks equating to unskilled work." This RFC did not take into account the physicians' opinion that plaintiff had moderate difficulties in maintaining social functioning and concentration, persistence or pace, and lacked adequate social interaction capacity to deal with the public. Nor, for that matter, did the ALJ's RFC take into account his own written finding that plaintiff had "moderate difficulties" maintaining concentration, persistence or pace, or the limitations he assessed in the hypothetical he posed to the VE at the hearing.

Because the ALJ's opinion is unclear as to what extent he accepted and rejected not only Dr. Cormier's opinions, but the opinions of the state agency consultants, it is also unclear whether Dr. Cormier's opinions should be regarded as contradicted for the purpose of this analysis. To be sure, Dr. Cormier's opinions are *different* than the opinions of Drs. Gross and Davis, but it appears that the ALJ did not accurately rely on Gross and Davis' opinions in assessing plaintiff's RFC. Regardless, if the ALJ had relied solely on the consulting doctors' opinions to reject Dr. Cormier's opinion, this would have been legal error. As noted above, the

[5] Dr. Davis' reference to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), which applies res judicata to administrative decisions, appears to signify that in Dr. Davis' opinion, plaintiff's mental impairments had not changed since he was previously denied disability benefits.

opinion of a non-examining physician, without other evidence, is insufficient to reject the opinion of a treating or examining professional, and the ALJ does not specifically cite other pieces of evidence he relied upon in rejecting Dr. Cormier's opinion. *See Lester*, 81 F.3d at 831. Thus, it may be appropriate to treat Dr. Cormier's opinions as uncontradicted for the purpose of this analysis, which would mean the ALJ was obligated to provide clear and convincing reasons for rejecting the opinions.[6] *Lester*, 81 F.3d at 830-31.

However, plaintiff argues, without analyzing the appropriate legal standard, that the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Cormier's opinions. *See* Pl.'s Br., Dckt. No. 15 at 8. Defendant's brief, on the other hand, obscures the applicable legal standard by arguing only, "[p]laintiff contends that the ALJ did not provide good reasons to discount Dr. Cormier's statement." Def.'s Br., Dckt. No. 17 at 4. As explained below, the ALJ's reasons for discounting Dr. Cormier's opinions do not meet the lower "specific and legitimate" standard, and clearly fail to satisfy the more exacting "clear and convincing" standard.

After discussing Dr. Cormier's opinions, the ALJ wrote only: "Some weight is given to Dr. Cormier's assessment, although the record as a whole does not indicate a preclusion from simple, repetitive tasks equating to unskilled work." AR 17. The ALJ also discussed some of Dr. Cormier's opinions earlier in the opinion, but did not reject any of the opinions he discussed. *See id.* at 14 (citing Ex. B2F). Thus, the only reason the ALJ gave for rejecting some of Dr. Cormier's opinions was that "the record as a whole" did not indicate that plaintiff was unable to perform simple, repetitive tasks "equating to unskilled work."

////

---

[6] The record contains no other medical professional opinions contradicting the limitations assessed by Dr. Cormier. Other doctors treated plaintiff's psychological impairments--Dr. Bloem noted mild chronic symptoms of depression and interpersonal problems, along with a history of drug and alcohol use. AR at 398. Dr. Stich diagnosed plaintiff with PTSD. *Id.* at 348. Neither of these diagnoses contradict Dr. Cormier's opinion.

This simply does not constitute a specific, legitimate reason for rejecting Dr. Cormier's opinion. The ALJ does not explain what evidence in the record undercuts Dr. Cormier's opinion, or what evidence shows that plaintiff is able to perform eight hours of simple, repetitive unskilled work each day. The ALJ failed to set "out a detailed and thorough summary of the facts and conflicting clinical evidence, state[] his interpretation of the evidence, and make[] a supported finding." *See Magallanes*, 881 F.2d at 751–55.

Defendant argues that "the ALJ pointed out that Plaintiff could maintain a car, drive a car, go grocery shopping, and that he drove himself to medical appointments." Def.'s Br. at 5. Although the ALJ did discuss these activities and found that plaintiff had "mild restrictions" in his activities of daily living, the ALJ did not state or even imply that his rejection of Dr. Cormier's opinions was premised on plaintiff's ability to perform these tasks, and this court may not supply the missing link. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (remanding a case for further proceedings where "the ALJ did not specifically link the testimony about appellant's daily activity to a conclusion that appellant's excess pain testimony lacked credibility. Moreover, there was absolutely no finding to the effect that the ability to perform those daily activities translated into the ability to perform appropriate work . . . we are wary of speculating about the basis of the ALJ's conclusion"). Moreover, plaintiff's ability to drive and go grocery shopping does not seem to contradict Dr. Cormier's opinions.

Similarly, defendant's arguments that Dr. Cormier's treatment notes regarding plaintiff's ability to engage in some activities of daily living do not support his opinion, and that Dr. Cormier must have based his opinion on plaintiff's subjective complaints, cannot make up for the ALJ's lack of specific, legitimate reasons for rejecting Dr. Cormier's opinions. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ--not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

B. <u>The Case Must be Remanded for Calculation and Payment of Benefits</u>.

As explained above, the ALJ failed to provide legally adequate reasons for rejecting Dr. Cormier's opinions. The remaining question is whether the case should be remanded for further proceedings or for payment of benefits.

A district court's decision to remand for payment of benefits rather than for further administrative proceedings is reviewed for abuse of discretion. *See Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where the record is fully developed and further administrative proceedings would not be useful, a district court should remand for payment of benefits. *See, e.g.*, *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1137-38 (9th Cir. 2011).

Specifically, the Ninth Circuit has explicitly held that a district court should remand for immediate payment of benefits if "1) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence, 2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke*, 379 F.3d at 593 (citing *Harman*, 211 F.3d at 1178; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). *See also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'"); *Strauss*, 635 F.3d at 1137-38; *Varney v. Secretary of Health & Human Services*, 859 F.2d 1396 (9th Cir. 1988).

When there are outstanding issues that must be resolved in a particular claimant's case, however, remand for further proceedings is appropriate. *See, e.g.*, *Harman*, 211 F.3d 1172 (9th Cir. 2000) (remand for further proceedings rather than payment of benefits appropriate where physician's conclusion that the plaintiff was "totally disabled" was a medical, rather than legal conclusion, and physician's complete testimony had not been presented to the ALJ); *Vasquez v.*

*Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009) (remand for further proceedings appropriate where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence); *Regennitter v. Commissioner of the Social Security Administration*, 166 F.3d 1294, 1300 (9th Cir. 1999) (requiring further proceedings to determine the date on which a claimant became disabled, after finding that disability was established by crediting claimant's and examining physician's testimony); *Strauss*, 635 F.3d at 1138 ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be").

Although Ninth Circuit panel decisions have, as explained above, repeatedly endorsed the credit-as-true rule and have held that district courts should remand for payment of benefits when the three-part test is met, at least one Ninth Circuit panel has held that district courts retain discretion in deciding whether to remand for payment of benefits or for further administrative proceedings in such a situation. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (discussing Ninth Circuit cases that appeared not to follow the credit-as-true rule, and concluding that the court must have "some flexibility in applying the crediting as true theory"); *Vasquez*, 572 F.3d at 594 (discussing a "split in authority" in the Ninth Circuit over whether the credit-as-true rule is mandatory or discretionary, but not resolving the conflict); *id.* at 602-05 (Judge O'Scannlain, in dissent, calling for *en banc* review of the credit-as-true rule to resolve the "irreconcilable conflict" between *Connett* and the *Benecke* line of cases).

District courts are thus commanded by the *Benecke* line of cases to remand for payment of benefits if the three-part test discussed above is met, but simultaneously instructed by *Connett* that they need not remand for payment of benefits under the same circumstances. As the *Benecke* line of authority appears to require this court to remand for payment of benefits if the precedent conditions are met, and the *Connett* line of cases merely permits, but does not require, this court to remand for further proceedings in the same circumstances, this court seems bound to apply the *Benecke* line of cases. Indeed, *Connett* does not explain how this court should decide

whether to apply the credit-as-true rule, but merely suggests that the court has flexibility in choosing which claimants receive benefits on remand when the precedent conditions are met. Such an approach appears to invite arbitrary decision-making and improper re-weighing of the medical evidence by this court. Thus, until the Ninth Circuit resolves this issue en banc, this court will follow the *Benecke* test.

Here, as explained in detail above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Cormier's opinion. Second, there are no outstanding issues that must be resolved before a determination of disability can be made. Defendant argues that "additional proceedings [are] necessary due to evidence of [p]laintiff's drug use during the relevant period." Def.'s Br. at 7 (citing AR 398, an August 2009 prison health care record stating that plaintiff "struggles with depression related to dealing with past loss . . . . Significant substance use *included* alcohol, prescription pills, cannabis, and methamphetamine") (emphasis added). It is true that where there is evidence of current drug addiction or alcoholism in the record, the agency must determine whether the addiction is a contributing factor material to the determination of disability. *See* 20 C.F.R. § 416.935(b)(1) ("The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol"). In this case, however, defendant has not cited any evidence actually showing or even suggesting that plaintiff is currently using drugs or alcohol. In fact, evidence in the record suggests the contrary. *See* AR 270 (plaintiff denies using any street drugs and reports that he stopped drinking in 2006), 402 (plaintiff claimed to not be using alcohol, recreational drugs, or tobacco). A single notation in a medical record of past substance use does not constitute evidence of current addiction. Plaintiff's past drug and alcohol use does not constitute an outstanding issue that must be resolved.

Defendant also argues that the agency needs to calculate when payments would be ceased due to plaintiff's incarceration. Claimants are not eligible for SSI benefits for any month during

which they are residents of a public institution, including prisons and jails. 20 C.F.R. § 416.211(a)(1), (c)(5)(iii). The record indicates that plaintiff was incarcerated since the alleged onset of his disability. In 2009, he was serving a two year sentence for domestic violence. *See* AR 103, 263-265. The record does not indicate whether plaintiff has been released or when he will be released. However, plaintiff's incarceration is immaterial to the determination of disability; rather, it affects which months the nonpayment provisions would apply in spite of the disability. That question can be addressed in the calculation of plaintiff's benefit amount.

Finally, it is clear from the record that the ALJ would be required to find plaintiff disabled if he credited Dr. Cormier's testimony. If a VE has testified that if the improperly rejected medical opinions were accepted, plaintiff would be unable to engage in work, further findings are unnecessary. *See e.g. Varney v. Sec'y of Health and Human Serv.*, 859 F.2d 1396, 1400 (9th Cir. 1988). Here, plaintiff posed hypothetical questions to the VE containing the limitations assessed by Dr. Cormier, and the VE testified that such a person would be unable to work. AR at 64-67. Therefore, record shows that when Dr. Cormier's opinion is credited as true, plaintiff is disabled within the meaning of the Social Security Act.

IV. Conclusion

The ALJ erred in failing to provide legally adequate reasons for rejecting plaintiff's examining doctor's opinions. The doctor's opinion must be credited as true, and the case should be remanded for the calculation and payment of benefits.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. Defendant's cross-motion for summary judgment is denied;

3. The Clerk is directed to enter judgment in plaintiff's favor;

4. The case is remanded for the calculation and payment of benefits; and

////

////

5. The Clerk is directed to terminate docket entry 20 (the parties' joint request for a decision in this matter).

DATED: March 22, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE